UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA,

    -against-                                              10 Cr. 197-04 (CM)

BENNY ROSARIO,

              Defendant.

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/28/21

DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASTIONATE RELEASE FILED PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) AND THE FIRST STEP ACT

McMahon, J.:

Benny Rosario is currently serving a term of 151 months' imprisonment for his involvement in the "Colon Drug Trafficking Organization," which distributed large quantities of cocaine and crack in Orange County and other communities in New York.

According to Bureau of Prisons Inmate Locator, Rosario is scheduled to be released on or about August 19, 2022.

Before the Court is Rosario's motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)((1)(A) and the First Step Act. Rosario argues that his high blood pressure, BMI level, and the "egregious conditions of [his] confinement" due to COVID-19, constitute extraordinary and compelling circumstances warranting his early release. Rosario Motion, ECF 598, at 5.

The Government has filed a response opposing the motion, arguing that Rosario has "failed to exhaust his administrative remedies" with the Bureau of Prisons ("BOP"), establish "extraordinary and compelling reasons" for early release, and, "even if he met those threshold

1

requirements, early release is not warranted under the Section 3553(a) factors." Government Opposition, ECF 599, at 1.

Background

Rossario was one of seven "core members" of the Colon drug trafficking organization. The core members "regularly obtained a supply of multiple kilogram quantities of cocaine from Puerto Rico. The cocaine was transported to a location in Fairlawn, New Jersey, then further distributed to locations in and around Middletown, New York, as well as to members of the Distribution Network in the Bronx and Queens." PSR at 9-10. Rosario himself "distributed multiple kilogram[s] [] of cocaine, including at a stash house" in Middletown, New York. *Id.* at 13. He "also assisted in obtaining a supply of cocaine from Puerto Rico." *Id.* Following the arrest of some of his co-conspirators, Rosario fled to Puerto Rico. *Id.*

On February 16, 2012, Rosario pleaded guilty before a magistrate judge to Count One of the Fourth Superseding Indictment, which charged him with conspiracy to distribute and possess with intent to distribute at least five kilograms of cocaine and more than 280 grams of crack, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. On October 1, 2012, the Court accepted the defendant's guilty plea. The defendant's Guidelines range was 188 to 235 months' imprisonment, with a statutory ten-year mandatory minimum sentence.

On October 3, 2012, the Court sentenced the defendant to 168 months' imprisonment. At sentencing, the Court stated that "[t]he quantity of drugs involved here . . . is very, very grave" and described the criminal conduct as "very, very evil activity." (Doc. No. 399 (Sentencing Tr.) at 13-14.) The Court acknowledged "that ten years is a long time," but concluded that there was no way to sentence the defendant to just the mandatory minimum given "the critical role" that

the defendant played "not just as a distributor in Middletown but as an importer from outside of Middletown." (*Id.* at 14.) In determining the appropriate sentence, the Court considered the sentences certain co-defendants received and the defendant's level of culpability as compared to his co-defendants. The Court believed it had to sentence the defendant to more than ten years because he was "much more culpable" than another defendant whom the Court sentenced to ten years. (*Id.* at 15.) Before imposing sentence, the Court stated, "I've considered all of the Section 3553(a) factors in fashioning this sentence." (*Id.*) To the Court, "the most important [factors were] the nature and circumstances of the offense, the amount of drugs involved, the fact that [the crime] went on for a very long period of time, the fact that [the defendant] played such a critical, facilitating role in the conspiracy, and [the Court's] own personal need to gradate the sentences in this case" so that each defendant was "punished relative to [his] personal culpability." (*Id.* at 15-16.) The Court sentenced Rosario to a term of imprisonment of 168 months—"a variant sentence, by 20 months"—to be followed by a term of five years' supervised release. (*Id.* at 16.)

In October 2015, the defendant's sentence was reduced to 151 months' imprisonment pursuant to an amendment to the Guidelines. Order Reducing Sentence, ECF 520.

Rosario's projected full release date is August 19, 2022. He is presently incarcerated at Manchester FCI, where there are currently zero inmates and staff with positive COVID-19 cases, and 699 inmates and 95 staff fully vaccinated.[1]

---

[1] https://www.bop.gov/coronavirus/ Bureau of Prisons COVID-19 Dashboard (last accessed July 20, 2021).

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[2] Until recently, this Court—and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[3] That changed on September 25, 2020, when the United States Court of

---

[2] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

[3] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

4

Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing

---

(A)  Medical Condition of the Defendant.—

    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)  The defendant is—

        (I)  suffering from a serious physical or medical condition,

        (II)  suffering from a serious functional or cognitive impairment, or

        (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### Rosario Has Exhausted His Administrative Remedies with the BOP

On May 20, 2020, Rosario filed a Request for Administrative Remedy stating, "I'm requesting that I be evaluated for the CARES Act by the Warden due to my belief of me being eligible for said Act. I am in compliance with all criteria that one needs to be in compliance within order to benefit from this Act." Gov't Opp., ECF 599, Exh. 1 p. 7. On June 8, 2020, the Warden denied Rosario's request.

The Government argues that Rosario's May 20, 2020 motion to the Warden was construed by the Warden as a request for home confinement and not a motion for compassionate release, and therefore, insufficient to meet the exhaustion requirement. Even if that were so, Rosario filed an additional request on December 12, 2020, in which he specifically asked for "a reduction in sentence under 18 USC 3582(c) AKA Compassionate Release." Rosario Reply Letter, ECF 600, at 2; Attachment 1.

Accordingly, Rosario has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

### Present Motion Before the District Court

Rosario claims that his high blood pressure and BMI constitute extraordinary and compelling reasons for his early release. Although the CDC may recognize those conditions as ones that can put someone at an increased risk of contracting COVID-19, the defendant cannot

rely on them here. Not only has the defendant already had and recovered from COVID-19, he was offered but refused to get the Pfizer COVID-19 vaccine on or about February 10, 2021. (*See* Government Opposition, ECF 599, Exhibit x , 2021 BOP Medical Records at PDF 41.) As such, he cannot now rely on any of his medical conditions to seek an early release from incarceration. *See United States v. Graves*, No. 15 Cr. 509 (CS), Doc. No. 288 at 3, (S.D.N.Y. Mar. 15, 2021) (denying compassionate release for a defendant with a BMI that put him in the high-risk category where the defendant refused the COVID-19 vaccine because "[it] would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them"); *United States v. Ordonez*, No. 13 Cr. 811 (ALC), Doc. No. 765, (S.D.N.Y. Mar. 8, 2021) (denying compassionate release for an inmate who refused the COVID-19 vaccine because the defendant's refusal belied both "his fear of developing serious complications from COVID 19 [and] also his concern that the facility cannot protect his health as it relates to COVID 19"); *United States v. King*, No. 16 Cr. 478 (CS), Doc. No. 422, (S.D.N.Y. Feb. 24, 2021) (holding that extraordinary and compelling reasons did not exist where a defendant declined a COVID-19 vaccine). The defendant has not demonstrated that the BOP is unable to monitor and treat any of his medical conditions, nor has he shown that he is unable to provide self-care in the BOP environment, especially in light of his refusal to take a preventative vaccine that was offered.

Accordingly, Rosario has failed to demonstrate that his current medical conditions present extraordinary and compelling circumstances warranting his immediate release.

Even if Rosario had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18

7

U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—counsel against a sentence reduction. Principal among those considerations in this case are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; . . . [and] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (2) (A-C), (6).

As the Court made clear at sentencing, Rosario was convicted of an "evil crime" involving a "grave" quantity of narcotics. He played a serious role in a longstanding drug organization that trafficked in harmful, addictive drugs from Puerto Rico to communities in this District. Rosario is currently serving a 151-month term—that is, approximately 12.5 years. Reducing the defendant's sentence any further would undermine the objectives of sentencing and would be inconsistent with the Court's decision that the defendant's personal culpability, as compared to his co-defendants, required a sentence above the ten-year mandatory minimum. Nothing in Rosario's present motion moves the Court to alter that determination.

And while Rosario's favorable prison record suggests a hopefulness that he will not recidivate, the reality is that—with a projected release date of August 2022—he will be released sometime in early 2022 to a structured BOP community supervision program (halfway house), where he will receive counseling and provided with resources to help him transition back into society. It is in society's interest that Rosario go through that process.

In sum, the defendant has failed to meet the substantial burden of showing extraordinary and compelling reasons for a reduction in his sentence, and, in any event, the Section 3553(a) factors weigh against granting such relief.

Defendant's motion for compassionate release is denied.

July 28, 2021

--------
Colleen McMahon
District Court Judge